**RICHARD MARK GARBER**
**Attorney at Law Bar #102688**
**12652 Huston Street**
**North Hollywood, CA 91607**
(818) 762-8120 / FAX (818) 762-0574
E-mail: rickgarber@sbcglobal.net

Attorney for Mark Efrem Rosenberg, Debtor

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | Chapter 13 |
| | Case No. 1:17-bk-13413-VK |
| | **COMBINED REPLY OF DEBTOR TO THE PLAN CONFIRMATION OBJECTIONS OF THE CHAPTER 13 TRUSTEE & TRINITY FINANCIAL SERVICES, LLC; DECLARATION OF MARK EFREM ROSENBERG; DECLARATION OF RICHARD MARK GARBER** |
| MARK EFREM ROSENBERG, | |
| Debtor. | Date:    September 18, 2018<br>Time:    9:30 a.m.<br>Ctrm:    301 |

**TO ALL PARTIES IN INTEREST:**

   **COMES NOW MARK EFREM ROSENBERG** (hereinafter, "Debtor"), in Reply to the

Objections of Elizabeth F. Rojas, Chapter 13 Trustee (hereinafter, "Trustee"), and to the Objections

of Trinity Financial Services, LLC ("Trinity"), the holder of the second Trust Deed recorded against

Debtor's residence, to Debtor's proposed plan confirmation.

Dated: September 13, 2018

_Rich Mark Garber_
Richard Garber, Attorney for Debtor

# TABLE OF CONTENTS

1.  Debtor's applicable commitment period is 36 months notwithstanding the
    fact that the term of Debtor's proposed Chapter 13 plan is for 60 months...........................1

2.  Trustee's objection from August 1, 2018 (and before) regarding Debtor's
    alleged failure to provide proof of income for the six months prior to the
    commencement of bankruptcy on December 29, 2017 is moot, as Debtor
    satisfied said objection on May 8, 2018, by providing Trustee with said
    documentation...........................................................................................................................2

3.  Debtor's tuition expense of $1,414.58 is a reasonably necessary expense for
    a devout, Orthodox Jewish family because there is no alternative but to send
    one's child to an Orthodox religious Jewish day school.......................................................3

    i    Jewish education is not a preference; it is an imperative. Jewish
         education is essential for the preservation of traditional rabbinic
         Judaism for future generations....................................................................................3

    ii.  Examples of circumstances where the court found a parochial
         or private school tuition to be a reasonably necessary expense...................................5

4.  Yeshiva Katana is a dual use provider of day care and religious instruction;
    as such, Debtor's expense of $491.66 is a reasonably necessary expense...........................8

5.  Debtor has established that the expense for an Orthodox Jewish religious
    school education is a reasonably necessary expense where Debtor has made
    other sacrifices so that he can afford religious school tuition for his children.....................9

6.  Debtor's charitable contribution of $621.00 per month is a reasonably
    necessary protected expense................................................................................................10

7.  Pursuant to §707(b)(2)(A)(ii)(IV), a debtor is permitted to spend up to
    $1,925.00 per year ($160.42 per month) for the private or parochial
    school tuition......................................................................................................................11

Declaration of Mark Efrem Rosenberg...................................................................................13

Declaration of Richard Mark Garber.......................................................................................18

i

# TABLE OF AUTHORITIES

<u>Table of Cases</u>

<u>In re Brugos</u>, 248 B.R. 446, 450-51 (Bkrtcy. M.D. Fla. 2000)......................................................5,6

<u>In re Gonzales</u>, 157 B.R. 604 (Bankr.E.D.Mich.1993)....................................................................8

<u>In re Grawey</u>, 2001 WL 34076376 (Bkrtcy. C.D. Ill. Oct. 11, 2001)...........................................5,9,10

<u>In re Humphrey</u>, 165 B.R. at 510.....................................................................................................6

<u>In re Kitchens</u>, 702 F.2d 885 (11th Cir.1983)...................................................................................6

<u>In re Maura</u>, 491 B.R. 493 (Bkrtcy. E.D. Mich. 2013)....................................................................3

<u>In re Navarro</u>, 83 B.R. 348 (Bankr.E.D.Pa. 1988)...........................................................................6

<u>In re Nicola</u>, 244 B.R. 795, 797-98 (Bankr.N.D.Ill.2000)..............................................................6,7

In <u>In re Webb</u>, 262 B.R. 685........................................................................................................5

<u>Table of Statutes</u>

11 U.S.C. §1325(a)(3)......................................................................................................................6

11 U.S.C. §1325(b)(A)(ii)..............................................................................................................6,12

11 U.S.C. § 1325(b)(1)(B)................................................................................................................6

11 U.S.C. §707(b)(2)(A)(ii)(IV).....................................................................................................6,7

11 U.S.C. §548(d)(4)........................................................................................................................10

11 U.S.C. 170(c)(1)..........................................................................................................................10

ii

## REPLY TO THE OBJECTIONS OF THE CHAPTER 13 TRUSTEE AND TRINITY FINANCIAL SERVICES TO DEBTOR'S PROPOSED PLAN

1.    Debtor's applicable commitment period is 36 months notwithstanding the fact that the term of Debtor's proposed Chapter 13 plan is for 60 months.

Debtor has demonstrated to the Trustee that his income is $6,000.00 per month; this income includes Debtor's fixed monthly ownership draw.[1] Debtor's wife's monthly gross income, based on her pay stubs for the six months (June-November, 2017) prior to bankruptcy, was $2,441.69 per month. Based on Debtor's family income for the six months prior to the commencement of Debtor's case, proof of which was provided to the Trustee in person by Debtor's attorney, Richard Garber ("Garber") on May 8, 2018 during the case check-in, Debtor established himself as a below median income debtor.

Debtor's household is 6 persons: Debtor (Husband), his spouse, and his four minor children. Debtor has firmly established by incontrovertible evidence that his median income for his family of 6 persons on December 29, 2017, when he filed his case, was $101,300.28. Moreover, Trustee has dropped her objection to Debtor's plan in so far as it relates to Debtor's applicable commitment period based on Debtor's evidence. Thus, Debtor's applicable commitment period is 36 months. Notwithstanding a commitment period of only 36 months, Debtor's plan provides for a term of 60 months, so that he can maximize payments to unsecured creditors over 60 months.

Debtor's total 2017 annual family income, as per the income Debtor reported on his 2017 federal income tax return, was $108,098.00 (adjusted gross income of $107,848.00), inclusive of any minority shareholder distribution that Debtor realized in 2017. Debtor provided Trustee with a copy of his 2017 income tax return.

Trinity's argument that Debtor must include as income one-twelfth (1/12) of his 35% minority ownership income share is absurd because the amount of Debtor's annual minority shareholder's ownership distribution from Arcade & Party Rentals by GEMS ("GEMS") cannot be ascertained until the company concludes its fiscal/calendar year, when all of the company's income and expenses have been recorded. Then, and only then, can the amount, if any, of Debtor's additional minority shareholder's distribution be determined. Essentially, Trinity wants Debtor to include estimated future income that may never materialize.

---

[1]    Debtor's salary is $2,500.00 per month, and his monthly ownership draw is $3,500.00 per month, for total income of $6,000.00. See Debtor's Form 122-C1.

1

2.    <u>Trustee's objection from July 9, 2018 (and before) regarding Debtor's alleged failure to provide proof of income for the six months prior to the commencement of bankruptcy on December 29, 2017 is moot, as Debtor satisfied said objection on May 8, 2018, by providing Trustee with said documentation.</u>

On July 9, 2018, Trustee filed further objections to Debtor's proposed plan [See Docket #64]; Trustee objected to Debtor's plan, in part, based on the fact that Debtor's means test analysis pursuant to Form 122C-1 indicated that Debtor's applicable commitment period was only for three years. Trustee wanted proof of Debtor's income for the six months prior to his filing of bankruptcy.

However, Trustee's objection of July 9, 2018, insofar as it objected to Debtor's means test analysis and commitment period, already was moot at the time it was filed because Debtor had provided Trustee with proof of income for the six months prior to filing bankruptcy three months earlier. Debtor, through his counsel, delivered a significant amount of documents to the Trustee, in the person of Susan Luong, Trustee's staff attorney, during attorney's confirmation check-in on May 8, 2018.

It should be noted that, notwithstanding Debtor's prior compliance on May 8, 2018 with Trustee's request for Debtor's proof of income for the six months prior to filing bankruptcy, Trustee filed three subsequent plan confirmation objections, all claiming that Debtor had not provided this documentation [See Trustee's plan confirmation objections on June 6, 2018 (Docket #43), and on July 9, 2018 (Docket #52).

Finally, during the check-in period on August 7, 2018, at which Trinity's counsel was not present because he appeared only by phone, Trustee's attorney, Susan Luong, acknowledged that Debtor had provided proof of income for the six month period prior to the filing of bankruptcy. Ms. Luong, the Trustee's staff counsel, lined out all of the moot objections that Debtor had satisfied.

Attached hereto and included herein as Exhibit #1 is Debtor's copy of the Trustee's interlineated August 7, 2018 Comments[2] for the subject case, showing the issues that had been resolved as well as those issues which still remain. The significant issue that still remains is Debtor's best efforts as it relates to his tuition payments.

///

///

---

[2]    It is the Trustee's standard practice to hand out comments to each debtor concerning the status of each pending case at the confirmation hearing, during the check-in period. This enables the debtor to know what issues still need to be cured in order to confirm his or her plan.    2

1   Lastly, it also should be noted that Trinity's attorney fails to acknowledge that Debtor filed a Reply

2   to the Trustee's plan objection, in which Debtor provided evidence of the documents Debtor had provided

3   to the Trustee. Trinity's objection to Debtor's plan is entirely unfounded. Debtor and his counsel are

4   surprised that Trinity's attorney would file an objection that is so materially inaccurate when the evidence

5   of Debtor's compliance was on file with the court.

6       3.   Debtor's tuition expense of $1,414.58 is a reasonably necessary expense for a devout,
           Orthodox Jewish family because there is no alternative but to send one's child to an
7           Orthodox religious Jewish day school.

8   Trinity cites In re Maura, 491 B.R. 493 (Bkrtcy. E.D. Mich. 2013) for the proposition that parochial

9   school tuition is not a "'reasonably necessary' expense, for purposes of determining whether a Chapter 13

10  plan offers to pay creditors all of the debtors' disposable income." Id. @ 515.

11  It should be noted that Maura, supra, was a chapter 7 case in which the United States Trustee had

12  brought a motion to dismiss the case as a substantial abuse because the debtor had too much disposable

13  income to qualify for Chapter 7; the US Trustee argued that debtor's parochial school tuition did not qualify

14  as a special circumstance under §707(b)(2)(B), and should be disallowed.

15  The discussion of Maura, supra, as to whether a parochial school tuition expense is a reasonably

16  necessary expense in Chapter 13 cases is dicta only. Moreover, said case is not a binding precedent on this

17  court because it is not a case emanating from the Central District of California, or even from the Ninth

18  Circuit. Moreover, the discussion in Maura was far from complete, as there are a number of cases which

19  permit tuition expenses in Chapter 13 as a reasonably necessary expense.

20  The foregoing having been said, even the Maura court recognized that if the debtor could show that

21  there was no "reasonable alternative" to sending his or her children to parochial school, then the parochial

22  school tuition expense could be deemed to be a reasonably necessary Chapter 13 expense. (Id. @ 515).

23      i    Jewish education is not a preference; it is an imperative. Jewish education is
            essential for the preservation of traditional rabbinic Judaism for future generations.

24  This court should take great heed of the declaration of Rabbi Eliezer Eidlitz. Being an orthodox Jew

25  is unlike being religious in any other faith. For a religious Jew, sending one's child to religious school is not

26  a preference, it is an imperative. It is part of who a religious Jew is. As pointed out, a strong Jewish education

27  is imperative to the survival of Judaism. Jews who are uneducated in Jewish law and history, and who are

28  not actively practicing Judaism by observing the 613 Commandments imposed on them by the Torah, are not

3

the future of Judaism. Modern Jewish history teaches that, over time (i.e., several generations), assimilation absorbs Jews - especially through intermarriage - into the main culture if they are not knowledgeable about, and firmly anchored to, the Jewish people through Jewish law and tradition; Jews who are absorbed into the main culture often cease to be functioning Jews - even if they remain nominally Jewish. A religious Jewish education is the essence, and the future, of Judaism and the Jewish people.

While Judaism certainly is a religion of faith, it is more importantly a religion of action. Judaism and Jewish law require a Jew to live a life that is recognizably Jewish. That entails - at a minimum - (for men) praying three times per day (usually with a minimum of 10 Jewish men who have received their Bar Mitzvah), keeping kosher, attending religious services on the Sabbath and Festivals, observing the Sabbath, (for men) wearing Tzizit, the undergarment with the white strands that hang down outside of their clothing (as a constant reminder of the 613 Commandments which govern their lives), (for women) observing all of the laws of menstruation, including going to Mikvah to ritually purify themselves after the menstruation period has ceased, and constant religious study. Religious study never ends, no matter how old a Jew gets.

Judaism governs all aspects of a religious Jew's life, right down to which sock and shoe to put on first. Jewish law covers business practices and ethics, suicide, death, burial, general ethics, what is proper and improper speech, the laws of Sabbath and Festivals (primarily, what one can and cannot do on the Sabbath and Festivals), what foods one can eat, the laws of keeping Kosher, the manner of one's dress, sexual relations, including when one can and cannot have sex, laws of modesty and ritual purity, and very much more. There is literally no aspect of Jewish life for which there is no regulatory code of conduct.

Jewish law is so invasive, and puts so many demands and restrictions on what a Jew can and cannot do, that most Jews, in the modern, secular era, have chosen to throw off the yoke of Judaism. Such Jews may remain marginally attached to their Judaism, such as by going to the synagogue twice per year, on the first day of Rosh Hashanah, the Jewish New Year, and on Yom Kippur, the Day of Atonement, or by going to a Passover Seder once per year, but such occasional expressions of Judaism as outlined above do not make one a serious Jew - that is, a Jew who is committed to living a thoroughly authentic and recognizable Jewish life. Moreover, a marginal Jew does not possess the knowledge of Jewish law and history to understand the important laws and concepts that underpin the Jewish faith. All of today's Jews (religious and irreligious alike), numbering a mere 18 million souls out of a world population of about 7 billion people, are a remnant of the Jews that once existed, but were killed off or absorbed into other populations.

4

1    Only about 15% of today's Jews are orthodox, and live an orthodox lifestyle. These religious Jews

2  are a remnant of a remnant. Their continued existence depends upon teaching future generations of Jews to

3  be Jewish. Other religions do not have such concerns. They have a sufficiently large core of the faithful; Jews

4  do not, and they must actively inculcate faith and education into their children to preserve their Jewish future,

5  and the future of Judaism.

6    Being Jewish - and especially being a religious Jew - is unlike being a member of any other faith.

7  It is very difficult for one who is not Jewish, or even for Jews for whom their Jewish faith is not a major

8  concern, to comprehend the all-incompassing importance that religious Jews put in the religious instruction

9  of their children.

10    However, public or private secular school - no matter how good or well-intentioned - is NOT a

11  suitable replacement for a religious Jewish school - not even a school of the caliber of Harvard-Westlake.

12  A public or private secular school does not have the means, inclination, or desire to be able to teach a Jewish

13  child how to be Jewish, or what it means to be Jewish. That is the unique function of a religious Jewish

14  school education; for the religious Jewish family and child, there is no substitute for a religious Jewish school

     education.

15    ii.    <u>Examples of circumstances where the court found a parochial</u>
16           <u>or private school tuition to be a reasonably necessary expense.</u>

17    In <u>In re Webb</u>, 262 B.R. 685, the court recognized that the tuition expense for a private school

18  education was a reasonably necessary expense where the debtor's son had been diagnosed with Attention

19  Deficit Hyperactive Disorder. The debtor's son had unsuccessfully tried to assimilate into public school due

20  to a lack of 'therapeutic educational environment' that was provided by the private school (Id. @ 690-91).

21    In <u>In re Grawey</u>, 2001 WL 34076376 (Bkrtcy. C.D. Ill. Oct. 11, 2001), the court held that it was a

22  reasonably necessary expense for the debtor to pay $277.00 per month for tuition to send her child to a

23  parochial school because he had chosen to "sacrifice... other basic necessities such as health insurance" in

24  order to afford her parochial school tuition.

25    In <u>In re Brugos</u>, 248 B.R. 446, 450-51 (Bkrtcy. M.D. Fla. 2000), the court allowed the debtors

26  to spend $590.00 per month to send their two minor daughters to parochial school, citing their strong belief,

27  the need to save their house from foreclosure, and their favorable treatment of unsecured creditors.

28  ///

The Brugos court noted that there is a split of authority as to whether payment of school tuition is a reasonably necessary expense for a Chapter 13 debtor. Brugos held in accordance with the minority position, which holds that as long as debtors are using all of their disposable income to fund the plan, Section 1325(b)(1)(B) is satisfied and the propriety of the debt should be analyzed within the confines of the good faith standard of § 1325(a)(3). Id. In the opinion of the Brugos court,

> "The minority view is the better view because it comports with the plain language of the code which only requires the debtors use all of their disposable income to fund the plan and does not refer to the type of debt that may be paid through the plan. This construction also accords with the purpose of chapter 13—to allow debtors to retain their assets while paying their creditors more than would be available in chapter 7. *In re Kitchens*, 702 F.2d 885 (11th Cir.1983). In addition, the good faith inquiry is better suited to address the merit of a debt. The good faith inquiry requires the court to make a value judgment just as the inquiry into whether a debt is of a type that should be paid through a chapter 13 plan requires the court to make a value judgment. Thus the good faith determination is better suited to assess the propriety of a debt than is the disposable income analysis. *Humphrey*, 165 B.R. at 510. *Cf. Kitchens v. Georgia R.R. Bank & Trust Co. (In re Kitchens)*, 702 F.2d 885, 888-89 (11th Cir. 1983).

There is no bright line rule for what constitutes a reasonably necessary expense. Brugos, @ 450; In re Reyes, 106 B.R. 155, 157 (Bankr.N.D.Ill.1989). A split of authority exists as to whether payment of school tuition is a reasonably necessary expense for a Chapter 13 debtor. In re Nicola, 244 B.R. 795, 797-98 (Bankr.N.D.Ill.2000). A determination of whether parochial school tuition is a reasonably necessary expense must be determined by looking at the facts of each case on a case by case basis. Brugos, @ 450. Some courts find the facts of certain cases support that private school tuition is a reasonably necessary expense. *See* In re Nicola, 244 B.R. at 797-98); see also In re Riegodedios, 146 B.R. 691 (Bankr.E.D.Va.1992); In re Navarro, 83 B.R. 348 (Bankr.E.D.Pa. 1988);

In Navarro, *supra*, the court permitted the debtors, who were devout Seventh Day Adventists, to pay for parochial school tuition for their child because, as Seventh Day Adventists, they considered religious education central to their beliefs and faith. Navarro, 83 B.R. at 351. The bankruptcy court overruled a creditor's objection to the confirmation of the debtors' plan since it is not unusual for families to send their children to parochial schools; since such parochial school tuition expenses are not uncommon, they should not be considered a luxury (Id. @ 355). Additionally, the court noted that ordering debtors to change their lifestyle when there is no obvious indulgence in luxuries would contravene the intent of Congress and place impossible burdens on the courts, which would be forced to determine the absolute necessity of every expense in every budget. Id. @ 355.

In this case, Debtor and his wife and children are devout Jews. They also consider education central to their faith. Moreover, as pointed, since Judaism imposes an enormous number of intricate duties and regulations on its adherents, knowing what to do and how to do it is essential; such knowledge can only be obtained with an intense daily course of religious instruction which can be only obtained in a formal religious school setting.

In *Nicola*, *supra*, the court allowed the debtors to spend $260 per month to send their child to Catholic school. Id. @ 799. Additionally, the debtors alleged that the local public school was inadequate, and provided evidence that the local public school's average standardized test scores were below those of the state as a whole. Id. @ 799. Moreover, the debtors' child had attended Catholic school her entire life, and therefore this is not a new expense for the debtors. Id. @ 799.

The court expressed its mindfulness that there would likely be significant emotional cost to the child to change placement in her final year of elementary school. Finally, the debtor testified that she and the child's father were practicing Catholics and that they desired their daughter to attend Catholic school. The court noted that, taken as a whole, the facts warranted a finding that the debtors' monthly payment of $260.00 for Catholic school tuition was reasonably necessary.

Debtor has testified that all of his children have always attended religious day school; in other words, they have never attended public school and are not equipped emotionally to handle the rough and tumble world of the public school culture. The boys likely would endure bullying and disparagement for wearing their yarmulke (skull cap) and Tzizit, the tassel part of which is exposed and be seen. There would be an enormous emotional costs to Debtor's children if they were forced to leave Jewish religious school, which is their home, and where all of their friends are, and where they feel connected.

In <u>Riegodedios</u>, *supra*, the court allowed the debtors to continue paying $614.00 per month for tuition for their daughter's senior year of college. Id, @ at 693. The court found the expense to be reasonably necessary because it was not a new expense of the debtors, as they had been paying her tuition throughout college, and because they were not spending an unreasonable amount of money on tuition at a private college. Id. @ 693. The court pointed out that Congress enacted Chapter 13 as a way to encourage debtors to pay their debts, and commented that education is beneficial, would make the daughter more productive, and is part of the "fresh start" envisioned by the Bankruptcy Code. Id. @ 693.

///

7

1    In In re Gonzales, 157 B.R. 604 (Bankr.E.D.Mich.1993), the court determined that the college

2  support payments of her adult children to be a reasonably necessary expense, while determining that the

3  debtor's graduate educational expenses were discretionary; the Gonzales court also took note of the

4  debtor's 20% distribution to unsecured creditors. In the instant case, Debtor's distribution to unsecured

5  creditors is a fraction under 18%.

6    Under the circumstances, this court should likewise find that Debtor's expense for tuition is

7  reasonably necessary. Debtor's children have always attended religious Jewish school. They know no

8  other world than the religious world, which is how Debtor wants it to be.

9    Sending his children to public school now would have a deleterious emotional and psychological

10  adverse effect on Debtor, his wife, and their children, who definitely would not fit in at any public school.

11  Debtor is using all of his disposable income to fund his plan; moreover, even though Debtor is entitled to

12  complete his plan in three years, based on a 3-year commitment period, Debtor has extended his plan term

13  to 60 months to maximize the distribution to unsecured creditors at 18%. Not only is Debtor using all of

14  his disposable income to fund his plan, but Debtor's expenses are very lean.

15    4.    Yeshiva Katana is a dual use provider of day care and religious instruction;
         as such, Debtor's expense of $491.66 is a reasonably necessary expense.

16    Yeshiva Katana is a religious pre-school, day care provider. For 2018-2019, Debtor's out-of-

17  pocket expense is $5,900.00, which translates into a monthly expense of $491.66 amortized over a 12-

18  month period. As a weekly expense, the cost of providing day care for Debtor's four-year old is only

19  $113.46 per month. Presumably, Trinity is not suggesting that two working parents do not need to provide

20  supervision for their four-year child while they are both working. Day care is not free; it comes at a cost.

21  Obviously, Debtor and his spouse must put their four year old child in the care of others while they earn

22  a living to meet their living expenses, including the expense of funding their plan.

23    Given Debtor's circumstances (i.e., two working parents with a four-year old child who needs

24  adult supervision and care while his parents are at work), the cost of providing that day care for their four-

25  year old child is a reasonably and necessary expense   [irrespective of whether it is a) provided by a

26  religious institution, and b) characterized as tuition]. Debtor and his wife have found a very sensible and

27  reasonable solution to their day care needs. They found an institution that can provide both day care and

28  religious instruction to their four-year old at the same time, and at a cost that is no more expensive than

if they hired a babysitter, and less much expensive than if they had hired an au pair or a nanny.

8

If not for the existence of day care, Debtor's wife could not work, and her income would be lost to the family and to this estate. Frankly, for this reason alone, Trinity should consider itself fortunate that Debtor has provided day care for his four-year old because Trinity's distribution, whatever it turns out to be (right now it is 18%), is largely dependent on the existence of the salary of Debtor's wife. If Debtor's spouse had to stay home to care for her four-year old child, she would lose her income and the amount of Trinity's distribution would be negatively and substantially impacted.

Under the circumstances, Debtor's day care expense of $491.66 per month is not only fair and reasonably necessary, but the expenditure benefits Debtor's bankruptcy estate by preserving Debtor's spouse's income for Debtor's bankruptcy estate. Again, the fact that Debtor's day care is being provided by a religious school is irrelevant and immaterial. The expense is appropriate and reasonably necessary for the support of Debtor, and/or his four-year old child.

5.    <u>Debtor has established that the expense for an Orthodox Jewish religious school education is a reasonably necessary expense where Debtor has made other sacrifices so that he can afford religious school tuition for his children.</u>

According to In re Grawey, 2001 WL 34076376 (Bkrtcy. C.D. Ill. Oct. 11, 2001), one criterion that a court may use in determining whether parochial school tuition is a reasonably necessary expense is whether one has made other sacrifices in order to afford the tuition expense. In Garawey, *supra*, the debtor's sacrifice was going without health insurance so that she could afford the tuition for her child's parochial school.

In the case of Debtor, he likewise has made other sacrifices so he can afford to cover his tuition expenses. Debtor has scheduled an expense for clothing, laundry and dry cleaning of only $75.00 per month for six people, four of whom are children who are growing. Children outgrow their clothes. An allowance of only $75.00 for a family of six for clothing, laundry and dry cleaning is woefully inadequate. Frankly, a budgetary line item of $200.00 per month would be more reasonable. Rather, Debtors get by with hand-me-downs, buying at thrift shops, and gifts from family members.

Debtor has understated his family's food expense even though he could claim more. For many, many years, Trustee has had a policy of allowing a standard, no-look food allowance of $250.00 per person. The amount of said no-look food allowance has never been adjusted for inflation; an allowance of only $250.00 per person for food by today's standards is insufficient. However, based on the Trustee's current no-look food allowance, Debtor is entitled to a minimum food expense of $1,500.00 per month for his family of six people; Debtor has claimed a food allowance of only $1,250.00 per month.

Debtor has claimed an expense for entertainment of only $75.00 per month for six people. A budget of $75.00 per month for a family of six will not even cover the cost of a monthly family night out at the movies or a family meal at a kosher restaurant. In fact, Debtor and his family rarely - if ever- eat out or go to the movies because they cannot afford it. Given Debtor's family size, an entertainment allowance of $200.00 per month would be more reasonable. For a six person family, Debtor has a small emergency expense allocation of $100.00 per month, and a very meager home repair allocation of $75.00 per month. Debtor's house needs some work, and $75.00 per month is insufficient for the work that is needed.

Debtor's sacrifice should be taken into account in determining whether or not their parochial school tuition is a reasonably necessary expense. As per the decision in <u>Garawey</u>, *supra*, this court should take into account both Debtor's sincere commitment to leading a Jewish life, which includes providing for religious instruction for his children, and his lifestyle sacrifices in determining that Debtor's parochial school tuition is a reasonably necessary expense.

Debtor also has bartered some services for a discount on the cost of his child's tuition to Emek. The discount appears as a "work exchange" on Emek's bill in the amount of $1,000.00. Debtor, through GEMS, will provide tables, chairs, linens, silverware, and video and arcade games at Emek events for a $1,000.00 tuition credit. Debtor is trying to do everything he can to reduce his tuition expense.

6.    <u>Debtor's charitable contribution of $621.00 per month is a reasonably necessary protected expense.</u>

Emek charges each family with children enrolled there a mandatory membership fee. For 2018-19, the membership fee is $4,800.00. This mandatory membership is separate and apart from the tuition fee. One of Debtor's sons has graduated to Ner Aryeh, a high school. Ner Aryeh also is a synagogue which includes a religious day school. To send a child to Ner Aryeh, the family must join the synagogue. There is a $2,000.00 membership fee, which is a tax deductible expense.

As the Ner Aryeh membership contract indicates, "[a]ccording to the IRS, membership dues in a synagogue are considered payment for an intangible religious benefit, and as much maybe claimed as a tax deduction." The same is true of the Emek membership fee, which Debtor previously claimed as a charitable expense. Debtor's membership expense at Emek and Ner Aryeh are not part of Debtor's tuition expense at those institutions.   Both Emek and Ner Arheh are "qualified religious or charitable entity or organization' pursuant to IRC §170(c)(1), as required by §548(d)(4). The membership is a qualified "charitable contribution" to a qualified religious and charitable entity.

The fact that the Emek and Ner Aryeh membership fees also are payable to the same entity that provides for the religious instruction of Debtor's children is irrelevant. The important element in determining the tax deductibility of the membership fee is its separate classification as an intangible religious benefit - as opposed to tuition, which is a tangible benefit. Tuition is a purchased service. As such, the Emek and Ner Aryeh membership fees are permissible charitable expenses.

Another one of Debtor's children attends the Bais Yaakov (Elementary) School for Girls. It does not charge a membership fee, but it does charge a banquet fee of $750.00 as a fund raiser for the school. The cost for food is $50.00 per plate. Since Debtor and his non-debtor spouse both attend the banquet, they claim only the non-meal portion of the banquet fee (i.e., $650) as the charitable expense component.

Thus, Debtor's three charitable expenses consist of two membership fees totaling $6,800.00 for 2018-19, and a banquet fee, the charitable component of which is $650.00, for a total charitable expense of $7,450.00 for 2018-2019. Divided by 12 months, Debtor's charitable expense for 2018-19 is $620.83 (rounded up to $621.00 per month). Debtor has amended his expense Schedule "J" to reflect the 2018-2019 charitable expenses, tuition, and day care expense.

Debtor reported family income on Form 122C-1 of $101,300.38; Debtor is entitled to claim a charitable expense of up to 15% of their gross income, or $15,195.04. As such, Debtor's charitable contributions of $7,450.00, as discussed herein, amount to only about 7% of their gross income. As such, Debtor actually could give more; however, the amount of Debtor's charitable contribution is within the limit set forth in §1325(b)(A)(ii); as such, it is an entirely protected charitable expense.

7.    Pursuant to §707(b)(2)(A)(ii)(IV), a debtor is permitted to spend up to $1,925.00 per year ($160.42 per month) for the private or parochial school tuition.

Pursuant to §707(b)(2)(A)(ii)(IV), a debtor is permitted to spend up to $1,925.00 per year ($160.42 per month) per child for the private or parochial school tuition. Debtor has four children; at $160.42 per child, that translates into a permissible expense of $641.68 per month that Debtor is entitled to spend for his children's parochial school tuition. Thus, even if this court should find that not all of Debtor's parochial school tuition is a reasonably necessary expense, it still must allow Debtor a minimal tuition expense as a reasonably necessary expense in the amount of $160.42 per month per child (total amount of $641.68 per month), as set forth in §707(b)(2)(A)(ii)(IV) of the Bankruptcy Code.

Based on the foregoing, Trinity is incorrect in asserting that Debtor is not entitled to any educational expense. At a minimum, Debtor is entitled to claim the statutorily permitted tuition expense allowed per minor child pursuant to §707(b)(2)(A)(ii)(IV) of the Bankruptcy Code. Debtor has four children under age 18 in parochial school; his minimum allowable tuition expense is $641.68 per month.

CONCLUSION

Debtor is entitled to claim all of his tuition expense, charitable contribution, and day care expense as reasonably necessary expenses. The charitable contributions are qualified contributions to qualified charitable entities, the amount of which is less than 15% of Debtor's gross income. As such, they are permissible charitable expenses pursuant to §1325(b)(A)(ii).

Debtor's four year old son needs adult supervision while his parents are at work. The cost of said day care to Debtor is less than $500 per month over a 12 month period. The cost is less than other alternatives, such as hiring an au pair or a nanny. The fact that Debtor's child gets religious instruction is a significant bonus.

Lastly, Debtor's religious school tuition expense is a reasonably necessary expense because of Debtor's sincere religious believes. As a devout Jew, there is no adequate alternative to intense, daily religious instruction. Jewish education is an imperative, not merely a preference. Debtor and his wife also have made tremendous sacrifices to be able to afford to send their children to day school. Their sacrifice should not go unrewarded.

WHEREFORE, Debtor prays that this court overrule the objections of the Chapter 13 Trustee and Trinity Financial Service, and confirm Debtor's plan as proposed.

Dated: September 13, 2018

_____
Richard Garber, Attorney for Debtor

12

DECLARATION

OF

MARK EFREM ROSENBERG

I, Mark Efrem Rosenberg, declare:

1.      I am the debtor in the above-titled bankruptcy proceeding, which I commenced on or about December 29, 2017.  I have personal knowledge of the facts to which I have testified.

2.      I filed an amended expense Schedule "J" on September 13, 2018.

3.      Attached hereto and incorporated herein as Exhibit "1" is a true and correct copy of the Trustee's Comments/Objections that her staff attorney hands out at the check-in. The interlineations reflect all of the items that I have satisfied; this includes proof of my income (and my wife's income) for the six months prior to commencing this bankruptcy.

4.      My family income on December 29, 2017 was less than the income for a family of six when I filed this case. Therefore, my minimum commitment period is established as a 3-year (36 month) commitment period.

5.      Attached hereto and incorporated herein as Exhibit "2" is a true and correct copy of the tuition and membership obligations to Emek and Ner Aryeh, and Bais Yaakov, which also includes a banquet obligation.

6.      Attached hereto and incorporated herein as Exhibit #3 is a true and correct copy of my amended expense Schedule "J," filed on September 13, 2018, which reflects my current year (2018-2019) charitable expense obligations, day care expense, and tuition expense, as well as other revised expenses.

7a.      Emek is charging a membership fee of $4,800.00 for 2018-19. Last year, Emek's member-ship fee was $4,500.00.

7b.      Ner Aryeh, the school to which my 10 year old son graduated, is charging a membership fee of $2,000.00 for 2018-19.

8.      These membership fees are not tuition expenses. They are separate and apart from any tuition expense that these schools charge.

13

9.    Both Emek and Ner Aryeh are "qualified religious or charitable entity or organization[s]" pursuant to IRC §170(c)(1); as such, a donation to such an entity constitutes a proper deduction pursuant to §548(d)(4) of the Code.

10.    The membership fee is a qualified "charitable contribution" to a qualified religious and and charitable entity pursuant §548(d)(3) of the Code.

11.    The fact that the Emek and Ner Aryeh membership fees also are payable to the same entities that provide the religious instruction to my children is irrelevant because the membership fee is a separate fee and constitutes a qualified charitable contribution. I have to belong to said entities in order to send my children there.

12a.    In order to send our children to religious day school, my wife and I have made a lot of financial sacrifices.

12b.    For example, we have understated our family's food expense even though I am entitled to a larger food allotment. Kosher food is very expensive. Kosher meat and cheese tend to be two to three times the cost of non-Kosher meat and cheese.

12c.    I am informed and believe, and based thereon testify that, for many, many years, Trustee has had a policy of allowing a standard, no-look food allowance of $250.00 per person.

12d.    I am informed and believe, and based thereon testify that, the amount of said no-look food allowance has never been adjusted (i.e., increased) to take into account the cost of food inflation since the standard no-look food allowance was implemented many years ago.

12e.    An allowance of only $250.00 per person for food, unadjusted for inflation, by today's standards is insufficient. Moreover, a $250.00 per person food allotment does not begin to factor in the cost of keeping Kosher. Our $1,250.00 food budget is very lean for a Kosher family of six people.

12f.    However, based on the Trustee's current no-look food allowance, I am entitled to a minimum food expense of $1,500.00 per month for my family of six people; I have claimed a food allowance of only $1,250.00 per month for my family of six people.

12g.    The amount of our reduced food budget, at $1,250.00 per month, is less than the Trustee's monthly "no look" expense for food for a family of six.

13.    We do not eat out like we used to do because it costs too much to take a family of six to a sit-down Kosher restaurant; we do not have the budget to afford eating out anymore. My wife and I carry lunch to work, as do our children.

14.    We rarely, if ever, go to the movies, because we do not have the budget to afford taking the family to the movies; a movie with popcorn and a drink is just too costly.

15.    We have allotted only $75.00 per month for entertainment, which is essentially nothing for a family of six people. An entertainment allowance of $75.00 per month will not even cover a monthly family night out for a family of six people.

16.    Given our family size, an entertainment allowance of $150.00 to $200.00 per month for entertainment would be much more reasonable, as it would cover at least one family night out per month. Unfortunately, we rarely go to the movies or eat out because we just cannot afford to do so at this time.

17.    I have scheduled an expense for clothing, and of laundry and dry cleaning of only $75.00 per month for six people, four of whom are children who are growing. Children outgrow their clothes.

18a.    A allowance of only $75.00 for a family of six for clothing, laundry and dry cleaning is woefully inadequate. A monthly allowance of $200.00 for clothing, laundry and dry cleaning would be more reasonable.

18b.    As it is, we get by with hand-me-down clothes, receiving clothing as an occasional gift, purchasing clothing at thrift shops or at really discounted sale prices. My wife and I do not buy clothes for ourselves; we only buy for the children.

19.    We spend virtually nothing (about $75.00) on home maintenance, even though we need some major roof repair work. We have no gardening expense; as such, our yard needs a lot of work.

20.    I have attempted to get as much tuition assistance in any form possible in order to reduce the amount I am required to pay.

21.    In this regard, I negotiated a "work exchange" with Emek in my capacity as a part owner of GEMS; I agreed to provide tables, chairs, linens, video and/or arcade games for various Emek events in exchange for a tuition fee credit of $1,000.00. It shows up on my Emek bill as a "work exchange" credit.

22.    My children always have attended religious day school. They have never attended public school. They are not equipped emotionally to handle the rough and tumble world of the public school culture, nor do I want them exposed to that culture. It is no place for a religious Jewish child to be during their formative years, when they are learning to be Jewish, and what it means to be Jewish.

23a.    My boys would be especially susceptible to bullying and disparagement for wearing their yarmulke (skull cap) and Tzizit, the four-cornered undergarment which is a Torah requirement. It is worn by all Jewish boys and men from the time the boys are potty-trained. There are four tassels attached to each of the four corners.

23b.    These tassels are worn outside, so that they can be seen by the person wearing them; the tassels serve as a constant reminder of God's presence and of 613 Torah Commandments by which Jews are obligated to live.

23c.    I do not want my children, especially my boys, bullied, disparaged, or in any way dis-respected as a result of being different - i.e., as a result of appearing and acting noticeably different from the majority culture.

23d.    There would be an enormous emotional costs to my children if they were forced to leave Jewish religious school, which is their home, and where all of their friends are, and where they feel connected. I have no intention of subjecting them to any such treatment.

24.    Attending religious Jewish education for my children is not just a preference for me and my wife; for Jews like us, a religious Jewish education is an imperative - not just a preference. A religious Jewish education is not a luxury for us; rather, sending our children to religious Jewish school entails a major financial sacrifice.

25.    You cannot call yourself as a serious religious Jew if you do not send your children to religious Jewish day school, for that is where, and how, they will be trained to become serious religious Jews themselves. They, in turn, will send their children (i..e, my grandchildren) to religious Jewish day school, and so, and so on, down through the ages. That is how traditional Jewish life and culture has been preserved through the ages, and that is how it will be perpetuated.

16

1    I declare under penalty of perjury of the laws of the State of California that the

2  foregoing testimony is true and correct and within my personal knowledge.  Executed this

3  September 13, 2018, in Valley Village (North Hollywood), CA.

4

5

6                                        Mark Efrem Rosenberg, Declarant

7

17

### DECLARATION OF RICHARD MARK GARBER

I, Richard Mark Garber, declare:

1.       I am an attorney licensed to practice law before this court and before all courts of the State of California. I am the attorney for Debtors. I have personal knowledge of the facts to which I have testified.

2.       Debtor filed an amended expense Schedule "J" on September 13, 2018.

3.       Attached hereto and incorporated herein as Exhibit "1" is a true and correct copy of the Trustee's Comments/Objections that her staff attorney hands out at the check-in. The interlineations reflect all of the items that I have satisfied; this includes proof of Debtor's income (and his wife's income) for the six months prior to commencing this bankruptcy.

4.       Debtor's family income on December 29, 2017 was less than the income for a family of six when he filed this case. Debtor's minimum commitment period is established as a 3-year (36 month) commitment period. His plan is proposed as a 60-month plan so he can pay more to unsecured creditors.

5.       Attached hereto and incorporated herein as Exhibit "2" is a true and correct copy of the tuition and membership obligations to Emek and Ner Aryeh, and Bais Yaakov, which also includes a banquet obligation.

6.       Attached hereto and incorporated herein as Exhibit #3 is a true and correct copy of Debtor's amended expense Schedule "J," filed on September 13, 2018, which reflects Debtor's current year (2018-2019) charitable expense obligations, day care expense, and tuition expense, as well as other revised expenses.

7.       On May 8, 2018, prior to the confirmation hearing, I delivered a significant number of documents to Susan Luong, the Chapter 13 trustee's staff attorney, during the check-in process. Among the documents I delivered to Ms. Luong, was proof of Debtor's income for the six months prior to the commencement of Debtor's case. Attached hereto and incorporated herein as Exhibit #4 is a true and correct copy of all of the documents I submitted to Ms. Luong on May 8, 2018, including all proof of income for the six month period prior to commencing this case.

8.      Debtor has established that his family's annualized income was less than the median California income for a family of six people.

9.      Based on Debtor's annualized income, Debtor is an under-median income debtor, and qualifies for a commitment period of 3 years (i.e., 36 months). There is no longer any disagreement about Debtor's commitment 8eriod of 36 months, as evidenced by the interlineations Ms. Luong made herself during the pre-confirmation check-in on August 7, 2018.

10.     Trinity's attorney was not privy to those interlineations, as he only appeared by phone, and was not present during the check-in. To date, Trustee has not updated her objections since the filing of her outdated July 9, 2018 objection, or the printing of the Trustee's Comments on August 3, 2018.

11.     Trinity has substantially relied on the Trustee's July 9, 2018 objection, insofar as it repeated the Trustee's outdated objections about Debtor's failure to submit proof of income establishing his entitlement to a 36-month commitment period. To that extent, Trinity's objection is also outdated, and should be overruled.

I declare under penalty of perjury of the laws of the State of California that the foregoing facts are true and correct and within my personal knowledge. Executed this September 13, 2018 at North Hollywood, CA.

_____
Richard Mark Garber, Declarant

*# 32*

**Calendar # 1**

9/18/18 @ 9:30am

| | | | |
|---|---|---|---|
| **Case Info:** | D1: | **Mark Efrem Rosenberg** | BOH: $2,680.44 |
| | D2: | | 341(a): February 21, 2018 9:00 am |
| | Attorney: | RICHARD MARK GARBER | Cnf Hrg: August 7, 2018 9:30 am |

**341(a) Disp:** ☐ Dism - no appr/pmt    ☐ Continued    ☐ 341(a):

Cnf: August 7, 2018 9:30 am

**CNF Disp:** ☐ Dism    ☐ 109g    ☐ Ch13 Only    ☐ Conv to Ch    ☐ Cnf    ☐ Ctd. Cnf <u>08/07/2018</u>

**Plan:** $ **485.06** for 60 mos @ ~~47.50~~ 17.79% % Filed: 8/1/18

✓ 1st Amended    *$485.06 (1-6); $599.04 (7-59); $599.11 (60); must pay at least $22,983 to unsecured creditors for liq.***percentage and residual. docket #62, MTA w/ Trinity    Oct 8.

**Tax Info:** <u>Tax returns; tax refunds; no debt > $500</u>

**Atty Fees:** <u>$6,000</u> allowed w/ $ 3,626 up front & $ 2,374 thru plan @ %
per RARA

**Payments:** Plan $ <u>599.01 (1 pp)</u>  Mortgage: $ <u>0</u>  (0 mp Chase)  ; $ (7 mp Trinity)

## TEE OBJ 3/9, 3/15, 7/9

**Objecting Creditors:** Trinity

<u>**Issues:**</u>

~~**Proof of Income** - Debtor to provide evidence of the following:~~
~~Short form business report provide 9/17 bank statement for acct ending in #4448~~

**Best Efforts:** ~~Debtor has surplus income per evidence provided.~~ --AVERAGE NET INCOME FROM PROFIT/LOSS STATEMENT FOR JAN 2018 TO MARCH 2018 IS $37,588/MONTH; 35% OF THAT IS $13,156 BUT ONLY $3500 "DRAW" IS LISTED ON SCH.I [IN ADDITION, BANK DEPOSITS AVERAGE $127,207 PER MONTH] // || Provide evidence of the following expenses: $525 childcare, $375 charity, $1,500 Tuition for children --FILE DECLARATION W/ COURT TO EXPLAIN HIGH EXPENSES

**Liquidation:** ~~File declaration w/ evidence of FMV of business.~~ --DECL. PROVIDED TO TRUSTEE, BUT STILL NOT FILED WITH THE COURT // || Chapter 7 distribution would be greater than plan percent: [$40 cash, $698 bank accts, $22,036 equity in business not exempt --must pay at least $22,983 to unsecured creditors for liquidation--OK AT 17.5%]

**Schedules:** Provide unfiled copy of schedule D to Trustee with complete account #s

~~**Means Test:**~~    ~~Provide evidence of income for the 6 months prior to filing~~

**Feasibility:**

| Creditor | Acct # | Class | Claim | Plan | |
|---|---|---|---|---|---|
| Toyota | L447 | 4/S | $2 | $0 | direct lease |
| Trinity | 2016 | 2/S | $37,081 | $0 | MTA GTD |
| ~~NationStar~~ | ~~9410~~ | ~~2/S~~ | ~~$247~~ | ~~$0~~ | ~~1st TD~~ |
| AMERICREDIT | | 3/S | ??? | 0 | LEASE CL.7 |
| CHASE | 2666 | 2/S | ✗ $1,049 | 0 | |
| Law Office of Szabo | | 4/S | $600,000 | $0 | Disallowed |

**Calculations:**

| | due | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total | Paid | Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Plan Pmt 1: | 29 | 485.06 | 485.06 | 485.06 | 485.06 | 485.06 | 485.06 | 599.04 | | | | | | $3,509.4 | $2,910.3 | $599.04 |
| | | | | | | | | | | | | | | 0 | 6 | |

**Mtg Pmt 1:**    Property Address 1:  12731 Hatteras St, Valley Village, CA

| Lender | pmt | due | late | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chase | $2,578 | 1 | 16 | paid | paid | paid | paid | paid | paid | paid | | | | |
| Trinity | | | | MTA | GTD | | | | | | | | | |

(20)

**Debtor Verifications:**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ID: | CADL D1: | | Exp: | | CADL D2: | | Exp: |
| | Address Verified: D1: ☐ | D2: ☐ | | | SSN Verified: D1: ☐ | D2: ☐ | |

Exhibit #1

**Other:** Case Filed: <u>12/29/2017</u>    CBD: 3/9/18    $129,000/MTA

Liquidation: (% ch7 v 17.50 % plan)    2017 corp: 950,946 gross

Tax Return: <u>2017</u> $<u>111,098</u> ; Refund $<u>4,578</u>    245,960 Net /12 ...

**\* 32**

**Calendar # 1**

POS:  1/11/18 APO:

| Prior Filings: | Court Case # | Name At Court | Chapter | Filed Date | Terminated Date | Discharge Date | Disposition |
|---|---|---|---|---|---|---|---|

$136 + $129 LIFE INSURANCE-OK
$129k MTA w/ Trinity

SCMI:                           3yr  -0th pmt-

|  | Scheduled | Actual |  | Scheduled Debts |
|---|---|---|---|---|
| Income | $7,959 |  | Secured | $1,007,171 |
| Expense | $7,473 | $7,473 | Priority | $0 |
| Surplus | $486 |  | Unsecured | $5,490 |

**Debtor Plan Payments:**

| Date | Type | Source | Amount |
|---|---|---|---|
| 07/16/2018 | MONEY ORDER FROM DEBTOR | 25009188524 | 970.12 |
| 05/15/2018 | MONEY ORDER FROM DEBTOR | 23756095934 | 485.06 |
| 05/15/2018 | MONEY ORDER FROM DEBTOR | 25009180571 | 485.06 |
| 03/15/2018 | MONEY ORDER FROM DEBTOR | 23756093100 | 485.06 |
| 02/26/2018 | MONEY ORDER FROM DEBTOR | 1104921823 | 485.06 |

21



*Inspiring Minds. Joining Hearts.*

# emek

**EMEK HEBREW ACADEMY**
**TEICHMAN FAMILY TORAH CENTER**

15365 Magnolia Blvd.
Sherman Oaks, CA 91403
p: 818.783.3663
www.emek.org

August 1, 2018

Mr. and Mrs. Ephraim Rosenberg
12731 Hatteras Street
Valley Village, CA 91607

Following is your Tuition Agreement for the 2018-2019 school year:

| | |
|---|---|
| Date | 07/10/2018 |
| Total Tuition & Fees | $18,033.00 |
| Tuition Assistance | $ 8,508.00 |
| Work Exchange | $ 1,000.00 |
| Balance | $ 8,525.00 |

Itemized charges are shown below:

| Item | Description | Qty | Rate | Amount |
|---|---|---|---|---|
| 6th - girls | Tuition 6th - girls | | 12,758.00 | 12,758.00 |
| Membership - DS | Synagogue membership fee | | 4,800.00 | 4,800.00 |
| Security Fee | Security Fee | | 475.00 | 475.00 |
| TA | Tuition assistance | | -8,508.00 | 8,508.00 |
| Work Exchange | Work Exchange | | -1,000.00 | 1,000.00 |

For Terms and Conditions please read the reverse side of this contract. Please sign and return one copy of this agreement to the school office by **August 8, 2018,** in order to finalize the registration process, your prompt return of these documents will enable the Finance Office to complete the enrollment process for your family. Kindly sign and return the FACTS documentation with the signed Tuition Agreement.

**We kindly ask to please remit a check in the amount of $95.00 dated 9/1/2018 payable to Emek PTA and the Volunteer Deposit check for $500.00 dated 5/1/2019 payable to Emek Hebrew Academy.**

Sincerely,
Emek Tuition Assistance Committee

We have read and understand the terms and conditions on the reverse side.

Date_____     Parents' Signatures_____

_____

Print Last Name_____

For Emek Hebrew Academy Teichman Family Torah Center **Esther Malka**

**\* Yes I want to support the Annual Campaign.**

To avoid solicitation, enclosed is my contribution of $_____ Monthly _____ One time _____

_____\* Endowment Fund – I would like more information

Exhibit #2                                    22

**CONGREGATION NER ARYEH**
**12422 Chandler Blvd.**
**Valley Village, CA 91607**
**P. 818-509-5909 ● F. 818-980-1971**
**NerAryeh@gmail.com**

## MEMBERSHIP CONTRACT

### SEPTEMBER 1, 2018 – AUGUST 31, 2019

**NAME:**   MR. AND MRS. ROSENBERG

**ADDRESS:** _12731 Hatteras St._

**CITY, STATE, ZIP CODE:** _Valley Village, CA 91607_

I am applying for family membership of **$2,000.00** for the coming year and would like to make payments as follow:

☑ Ten-payment Plan: Ten (10) payments of **$166.67** paid through FACTS monthly from September 2̶0̶ 5, 2018 through June 2̶0̶ 5, 2019.

The ability to apply and be considered for admission to Yeshiva Ner Aryeh high school is a benefit of synagogue membership. Children of members are not automatically accepted in our school. A separate application must be completed to enable the school to determine if the child is a good candidate for the school.

I understand that I am responsible for the entire year's dues once this contract is signed.

Signature: _____

Print Name: _Ephraim (Mark) Rosenberg_ Date: _8/10/18_

According to the IRS, membership dues in a synagogue are considered payment for an intangible religious benefit, and as such may be claimed as a tax deduction.

23

בס״ד

**YESHIVA NER ARYEH**

נר
אריה

| MESIVTA & BEIS MEDRASH | מתיבתא ובית מדרש |

July 25, 2018

Mr. and Mrs. Ephraim Rosenberg
12731 Hatteras Street
Valley Village, CA 91607

Dear Mr. and Mrs. Rosenberg,

**ROSHEI YESHIVA**
Rabbi Yechezkel Cohen
Rabbi Benyomin Lieberman
Rabbi Yochanan Weiner

**MENAHEL**
Rabbi Yochanan Weiner

**ASSISTANT MENAHEL**
Rabbi Avrohom M. Mendelson

**SECULAR PRINCIPAL**
Mr. Jason Strouse

**BOARD OF DIRECTORS**
Steve Darrison
Jonathan Istrin
George Lintz
Steve Mazlin
Stephen Samuel
Danny Schoen
David Striks

We want to thank you for entrusting your son's *chinuch* to our Yeshiva. We firmly believe and hope you agree that a primary reason for our success with the *bochrim* is tied in part to our intimate *Rebbi*/student ratio. The downside to this is that it costs an average of $18,500 per year for each student. The Tuition Committee, established to balance the parents' needs with the Yeshiva's needs, requests all families try and stretch their funds, allowing maximum tuition availability.

Based on a review by the Tuition Committee, we have set the tuition at $6,000.00 for the 2018/19 school year of which $600.00 a month is to be paid through FACTS in ten (10) monthly installments.

Please note: You are required to immediately report a change in your financial situation. The Yeshiva reserves the right to revisit the terms of a student's scholarship as necessary. If there has been any misrepresentation of ability to pay, this contract is null and void.

Please be aware that until all financial obligations have been confirmed, your child may be deemed "un-enrolled". Finally, please be aware that tuition and all fees are non-refundable.

If you have any questions, you can call our liaison, Rabbi Cohen at 718-570-7454.

Sincerely,
Yeshiva Ner Aryeh Tuition Committee

By way of signature, you agree to pay the Yeshiva as outlined in the above document. Please sign below.

_Rosenberg_
Father's Last Name – Please print clearly

_Ephraim (Mark)_
Father's First Name – Please print clearly

_____
Father's Signature

_8/10/18_
Date

_Rosenberg_
Mother's Last Name – Please print clearly

_Liron_
Mother's First Name – Please print clearly

_____
Mother's Signature

_8/10/18_
Date



12422 Chandler Boulevard • Valley Village, CA 91607
PHONE 818-509-5909 • FAX 818-980-1971

24

בית יעקב
# BAIS YAAKOV SCHOOL FOR GIRLS

7353 Beverly Blvd., Los Angeles, CA 90036
TEL: (323) 938-3231 - FAX: (323) 930-0477



**Rabbi Yoel Bursztyn**
*Educational Director*

**Mrs. Dena Wolmark**
*Principal, General Studies*

August 2, 2018

JACOB KASIRER z"l
Honorary President

SAM MENLO
Vice President

PAUL SOLOMON
Treasurer

ENOCH KIMMELMAN
Secretary

BOARD OF DIRECTORS

RABBI JACOB FRIEDMAN
Chairman of the Board

Aaron Dov Friedman
David Friedman
Solomon Goldner
Michael Kest
Leslie Klein
Meir Levin
Ronnie Mayer
David Striks
Barry Weiss
Zev Wolmark
Morris Zyskind

Dear Mr. and Mrs. Rosenberg,

Thank you for registering your daughter at Bais Yaakov.
Your total payment, including registration, tuition and banquet
fees is $8,000. The breakdown of the amount is as follows:

| | |
|---|---|
| Registration Fee | 850 |
| Tuition | 6,400 |
| Banquet Fee | 750 |
| Your Total Charges | 8,000 |
| Scholarship Granted | 10,500 |

Your total responsibility of $8,000 should be paid in
postdated checks or with a credit card number.

We look forward to a successful and productive year. If you need
any assistance, please don't hesitate to contact the school office
at (323) 938-3231.

Sincerely,

Rabbi Yoel Bursztyn

ALL CONTRIBUTIONS TO THE SCHOOL ARE TAX DEDUCTIBLE
AFFILIATED WITH THE BUREAU OF JEWISH EDUCATION

25

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| RICHARD MARK GARBER          BAR ID#: 102688<br>ATTORNEY AT LAW<br>12652 HUSTON STREET<br>NORTH HOLLYWOOD, CA 91607<br>Ph: (818)762-8120<br>FAX: (818)762-0574<br>rickgarber@sbcglobal.net<br><br><br>☐ Individual appearing without attorney<br>☒ Attorney for Debtor | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

| In re:<br><br>  MARK EFREM ROSENBERG<br><br><br><br><br><br>                                        Debtor(s) | CASE NO.:  1:17-bk-13413-VK<br><br>CHAPTER:  13<br><br><br>**SUMMARY OF AMENDED SCHEDULES,<br>MASTER MAILING LIST,<br>AND/OR STATEMENTS<br>[LBR 1007-1(c)]** |
|---|---|

A filing fee is required to amend Schedules D or E/F (see Abbreviated Fee Schedule on the Court's website www.cacb.uscourts.gov). A supplemental master mailing list (do not repeat any creditors on the original) is required as an attachment if creditors are being added to the Schedule D or E/F.
Are one or more creditors being added? ☐ Yes ☒ No

The following schedules, master mailing list or statements (check all that apply) are being amended:

☐ Schedule A/B     ☐ Schedule C     ☐ Schedule D     ☐ Schedule E/F     ☐ Schedule G

☐ Schedule H     ☐ Schedule I     ☒ Schedule J     ☐ Schedule J-2     ☐ Statement of Financial Affairs

☐ Statement About Your Social Security Numbers     ☐ Statement of Intention     ☐ Master Mailing List

☐ Other (specify) _____

I/we declare under penalty of perjury under the laws of the United States that the amended schedules, master mailing list, and/or statements are true and correct.

Date: 09/12/2018

_____
Debtor 1 Signature

_____
Debtor 2 (Joint Debtor) Signature (if applicable)

**NOTE:** It is the responsibility of the Debtor, or the Debtor's attorney, to serve copies of all amendments on all creditors listed in this Summary of Amended Schedules, Master Mailing List, and/or Statements, and to complete and file the attached Proof of Service of Document.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2015                              Page 1                        F 1007-1.1.AMENDED.SUMMARY

Exhibit #3                                                    26

| Fill in this information to identify your case: | | |
|---|---|---|
| **Debtor 1** | **Mark Efrem Rosenberg** | Check if this is: |
| | | ■ An amended filing |
| **Debtor 2**<br>(Spouse, if filing) | | ☐ A supplement showing postpetition chapter 13 expenses as of the following date: |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | |
| Case number<br>(If known) | 1:17-bk-13413-VK | MM / DD / YYYY |

## Official Form 106J
## Schedule J: Your Expenses                                                12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Your Household

1. **Is this a joint case?**

   ■ No. Go to line 2.
   ☐ Yes. Does Debtor 2 live in a separate household?

      ☐ No
      ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?**   ☐ No

| Do not list Debtor 1 and Debtor 2.<br><br>Do not state the dependents names. | ■ Yes. | Fill out this information for each dependent............. | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|---|---|---|
| | | | Son | 5 | ☐ No<br>■ Yes |
| | | | Daughter | 11 | ☐ No<br>■ Yes |
| | | | Son | 14 | ☐ No<br>■ Yes |
| | | | Daughter | 16 | ☐ No<br>■ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**    ■ No    ☐ Yes

### Part 2:    Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | | Your expenses |
|---|---|---|
| 4. The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4.  $ | 2,807.58 |
| If not included in line 4: | | |
| 4a.    Real estate taxes | 4a.  $ | 0.00 |
| 4b.    Property, homeowner's, or renter's insurance | 4b.  $ | 0.00 |
| 4c.    Home maintenance, repair, and upkeep expenses | 4c.  $ | 75.00 |
| 4d.    Homeowner's association or condominium dues | 4d.  $ | 0.00 |
| 5. Additional mortgage payments for your residence, such as home equity loans | 5.  $ | 0.00 |

27

Debtor 1   **Mark Efrem Rosenberg**                                    Case number (if known)   **1:17-bk-13413-VK**

| | | | | |
|---|---|---|---|---|
| 6. | **Utilities:** | | | |
| | 6a.  Electricity, heat, natural gas | 6a. | $ | 0.00 |
| | 6b.  Water, sewer, garbage collection | 6b. | $ | 0.00 |
| | 6c.  Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | 0.00 |
| | 6d.  Other. Specify:  **Landline Telephone, Internet** | 6d. | $ | 100.00 |
| | **DWP** | | $ | 215.00 |
| | **Gas** | | $ | 45.00 |
| 7. | **Food and housekeeping supplies** | 7. | $ | 1,250.00 |
| 8. | **Childcare and children's education costs** | 8. | $ | 491.66 |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | $ | 75.00 |
| 10. | **Personal care products and services** | 10. | $ | 35.00 |
| 11. | **Medical and dental expenses** | 11. | $ | 0.00 |
| 12. | **Transportation. Include gas, maintenance, bus or train fare.** Do not include car payments. | 12. | $ | 0.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | $ | 75.00 |
| 14. | **Charitable contributions and religious donations** | 14. | $ | 621.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a.  Life insurance | 15a. | $ | 54.04 |
| | 15b.  Health insurance | 15b. | $ | 0.00 |
| | 15c.  Vehicle insurance | 15c. | $ | 0.00 |
| | 15d.  Other insurance. Specify: | 15d. | $ | 0.00 |
| 16. | **Taxes. Do not include taxes deducted from your pay or included in lines 4 or 20.** Specify: | 16. | $ | 0.00 |
| 17. | **Installment or lease payments:** | | | |
| | 17a.  Car payments for Vehicle 1 | 17a. | $ | 0.00 |
| | 17b.  Car payments for Vehicle 2 | 17b. | $ | 0.00 |
| | 17c.  Other. Specify: | 17c. | $ | 0.00 |
| | 17d.  Other. Specify: | 17d. | $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as** deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I). | 18. | $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | 19. | | |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.*** | | | |
| | 20a.  Mortgages on other property | 20a. | $ | 0.00 |
| | 20b.  Real estate taxes | 20b. | $ | 0.00 |
| | 20c.  Property, homeowner's, or renter's insurance | 20c. | $ | 0.00 |
| | 20d.  Maintenance, repair, and upkeep expenses | 20d. | $ | 0.00 |
| | 20e.  Homeowner's association or condominium dues | 20e. | $ | 0.00 |
| 21. | **Other:** Specify:   **Emergency fund** | 21. | +$ | 100.00 |
| | **Tuition for 3 children at Jewish Religious School** | | +$ | 1,414.58 |
| 22. | **Calculate your monthly expenses** | | | |
| | 22a.  Add lines 4 through 21. | | $ | 7,358.86 |
| | 22b.  Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | | $ | |
| | 22c.  Add line 22a and 22b.  The result is your monthly expenses. | | $ | 7,358.86 |
| 23. | **Calculate your monthly net income.** | | | |
| | 23a.  Copy line 12 (*your combined monthly income*) from Schedule I. | 23a. | $ | 7,959.16 |
| | 23b.  Copy your monthly expenses from line 22c above. | 23b. | -$ | 7,358.86 |
| | 23c.  Subtract your monthly expenses from your monthly income. The result is your *monthly net income.* | 23c. | $ | 600.30 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☑ No.
☐ Yes.   Explain here:

28

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

12652 Huston Street, North Hollywood, CA 91607

A true and correct copy of the foregoing document entitled (specify): _____
_____AMENDED SCHEDULE "J"_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) 09/13/2018_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (date)  09/13/2018_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Victoria Kaufman, U.S. Bankruptcy Judge, 21041 Burbank Blvd., Suite 354, Woodland Hills, CA 91367

Elizabeth Rojas, Chapter 13 Trustee, 15260 Ventura Blvd., Suite 710, Sherman Oaks, CA 91403

Mark Efrem Rosenberg, Debtor, 12731 Hatteras St., Valley Village, CA 91607

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 09/13/2018 | Keti Bicon | *Keti Bicon* |
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

29

# Mailing Information for Case 1:17-bk-13413-VK

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Richard Mark Garber**    rickgarber@sbcglobal.net, garberrr82127@notify.bestcase.com
- **Rafael R Garcia-Salgado**    rgarcia@bwslaw.com, bantle@bwslaw.com,rjr-nef@bwslaw.com,jgomez@bwslaw.com
- **Christina J O**    christinao@mclaw.org, CACD_ECF@mclaw.org
- **Richard J Reynolds**    rreynolds@bwslaw.com, psoeffner@bwslaw.com,tmims@bwslaw.com,rjr-nef@bwslaw.com;fcabezas@bwslaw.com
- **Elizabeth (SV) F Rojas (TR)**    cacb_ecf_sv@ch13wla.com
- **Gabor Szabo**    smdulaw@sbcglobal.net
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

    **JPMORGAN CHASE BANK, N.A.**
    ,

## Creditor List

Click the link above to produce a complete list of **creditors** only.

## List of Creditors

Click on the link above to produce a list of **all** creditors and **all** parties in the case. User may sort in columns or raw data format.

# Richard Mark Garber

**Attorney at Law
12652 Huston Street
North Hollywood, CA 91607**

---

**Telephone   (818) 762-8120
Telecopier   (818) 762-0574**

May 8, 2018                                        **HAND DELIVERED TO
                                                   TRUSTEE AT COURT**

Elizabeth Rojas, Chapter 13 Trustee
c/o Melissa Besecker or Susan Luong, Staff Attorneys
15260 Ventura Blvd., Suite 710
Sherman Oaks, CA 91403

Re:   <u>Mark Efrem Rosenberg</u>
      1:17-bk-13413-VK

Dear Ms. Rojas, Melissa Besecker,  and/or Ms. Luong:

Please find enclosed the following documents you have requested in this case:

1)   Declaration of Value of Minority Business Interest
2)   2017 profit & loss statement for Arcade & Party Rental by Gems, Inc.
3)   2018 1st Quarter profit & loss statement (also serving as short form business operating statement) for Arcade & Party Rental by Gems.
4)   Business Bank Statements (Wells Fargo) for the months of July-December, 2017
5)   Personal Bank Statements (Chase Bank)  for the months of June 6, 2017 - January 4, 2018
6)   Mercury Homeowners Insurance Declaration Page
7)   Kaiser Permanente Proof of Insurance Premium
8)   Proof of Insurance for Mark Rosenberg
9)   Proof of Insurance for Liron Rosenberg
10)  Proof of Auto Insurance (Mercury Declaration Page)
11)  Salary Checks for Mark Rosenberg
12)  Proof of Mark Rosenberg Ownership Draw
13)  6 months of pay stubs for Liron Rosenberg - July, 2017 to December, 2017
14)  Current pay stubs for Liron Rosenberg for April, 2018

Sincerely,

Richard Garber

Exhibit # 4

31

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

    12652 Huston Street, North Hollywood, CA 91607

A true and correct copy of the foregoing document entitled (*specify*): _____
COMBINED REPLY OF _____
DEBTOR TO THE PLAN CONFIRMATION OBJECTIONS OF THE CH.13 _____
TRUSTEE & TRINITY FINANCIAL SERVICES _____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 09/13/2018_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) __09/13/2018_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Victoria Kaufman, U.S. Bankruptcy Judge, 21041 Burbank Blvd., Suite 354, Woodland Hills, CA 91367

Elizabeth Rojas, Chapter 13 Trustee, 15260 Ventura Blvd., Suite 710, Sherman Oaks, CA 91403

Mark Efrem Rosenberg, Debtor, 12731 Hatteras St., Valley Village, CA 91607

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 09/13/2018 | Keti Bicon | *Keti Bic*  |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

# Mailing Information for Case 1:17-bk-13413-VK

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Richard Mark Garber**    rickgarber@sbcglobal.net, garberrr82127@notify.bestcase.com
- **Rafael R Garcia-Salgado**    rgarcia@bwslaw.com, bantle@bwslaw.com,rjr-nef@bwslaw.com,jgomez@bwslaw.com
- **Christina J O**    christinao@mclaw.org, CACD_ECF@mclaw.org
- **Richard J Reynolds**    rreynolds@bwslaw.com, psoeffner@bwslaw.com,tmims@bwslaw.com,rjr-nef@bwslaw.com;fcabezas@bwslaw.com
- **Elizabeth (SV) F Rojas (TR)**    cacb_ecf_sv@ch13wla.com
- **Gabor Szabo**    smdulaw@sbcglobal.net
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

    **JPMORGAN CHASE BANK, N.A.**

    ,

## Creditor List

Click the link above to produce a complete list of **creditors** only.

## List of Creditors

Click on the link above to produce a list of **all** creditors and **all** parties in the case. User may sort in columns or raw data format.