BURKE, WILLIAMS & SORENSEN, LLP
Richard J. Reynolds, Bar No. 89911
Rafael R. Garcia-Salgado, Bar No. 283230
1851 East First Street, Suite 1550
Santa Ana, CA  92705-4067
Telephone:    949.863.3363
Facsimile:     949.863.3350

Attorneys for Creditors
TRINITY FINANCIAL SERVICES, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>MARK EFREM ROSENBERG aka MARK E. ROSENBERG aka MARK ROSENBERG fdba NEW RAVE BATHROOMS aka EPHRAIM ROSENBERG fdba RR PACKAGING & ASSEMBLY,<br><br>Debtor, | Case No.  Am<br><br>Chapter Number:  13<br><br>**SECURED CREDITOR TRINITY FINANCIAL SERVICES, LLC'S OBJECTION TO SECOND AMENDED CHAPTER 13 PLAN**<br><br>**Plan Confirmation Hearing:**<br><br>Date:    11/06/18<br>Time:    9:30 a.m.<br>Ctrm:    301<br>            21041 Burbank Blvd<br>            Woodland Hills, CA 91367 |

TRINITY FINANCIAL SERVICES, LLC ("Trinity"), the largest unsecured creditor in this case, hereby files its Objection to Second Amended Plan, and in the alternative, Reply in support of its Objection [Docket No. 75] (the "Objection") to confirmation of the Debtor's proposed plan in the above-referenced matter.  Trinity's previous objections were filed on February 27, 2018 [Docket. No. 26], April 24, 2018 [Docket. No. 39], and September 4, 2018 [Docket No. 75].  The Debtor filed an untimely combined reply in support of the first amended plan on September 13, 2018 [Docket No. 77] (the "Reply"), just five days before the Court's

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SANTA ANA

IRV #4828-4681-3561 v1
06836-0089

- 1 -

1:17-BK-13413-VK
OBJECTION TO SECOND AMENDED PLAN

confirmation hearing. The Debtor then filed an amended Chapter 13 plan on October 25, 2018 [Docket No. 82] (the "Plan"), less than two weeks before the Court's November 6, 2018 confirmation hearing.

## ARGUMENT

### A. The Debtor Has Failed to Demonstrate That He Has Below-Median Income

Trinity objects to the Plan because the Debtor has still not demonstrated that he qualifies for a 36-month commitment period for his plan. The Debtor's representations regarding his *current monthly income* remain flawed, and the evidence is mounting that the Debtor is manipulating the information he discloses to reach the desired result. As noted by Trinity in its objection to the Debtor's First Amended Plan, because this case was filed on December 29, 2017, the Debtor's current monthly income for purposes of determining a good faith plan's commitment period is to be determined by averaging the Debtor's gross income derived during the 6-month period preceding the bankruptcy filing. 11 U.S.C. §101(10A). This means the Debtor's gross income, without regard to whether such income is taxable income, derived during the months of June through November 2017, is to be used for the calculation. 11 U.S.C. §1325(b)(4); *In re Wiegand*, 386 B.R. 238, 239 (9th Cir. BAP 2008).

In his Amended Schedule I [Docket No. 81] and Form 122C-1 [Docket. No. 10], the Debtor discloses gross income from his co-owned business, Arcade & Party Rentals by GEMS, Inc. ("GEMS") of $6,000 per month. The Debtor confirms this representation in his Declaration filed August 1, 2018 [Docket. No. 64] at ¶12a. However, in paragraphs 12a. and 12b. of his Declaration, Debtor admits that this is not all of his income as some income derived throughout the year is distributed at the end of the year. For example, two days after the filing of Debtor's bankruptcy, GEMS' income for a fiscal year ending December 31, 2017 would have closed, and a determination of any distribution to its owners would be subject to calculation. In his Reply, the Debtor asserted that requiring the Debtor to wait for this calculation to determine his current monthly income is absurd. In fact, however, this is the *law*. If GEMS uses a fiscal year different from the calendar year, the Debtor has not disclosed what it is. It must also be noted that some income derived during the year and under Debtor's control was left in GEMS. The Debtor states

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SANTA ANA

IRV #4828-4681-3561 v1
06836-0089

- 2 -

1:17-BK-13413-VK
OBJECTION TO SECOND AMENDED PLAN

as follows (emphasis original):

> 12a. I am paid fixed salary of $2,500.00 per month and a fixed draw of $3,500.00 per month. ***At the end of the year,*** we determine whether or not there is net income that is available to distribute to the owners, and if so, how much to distribute.
>
> ***12b. Moreover, if we distribute all of the net income, we will not have any reserve cash with which to operate. We always have to allocate a portion of GEMS' net income to reinvestment in GEMS for operational needs and unforseen emergencies.***

Consequently, the information provided by the Debtor in his publicly available schedules and declarations remains incomplete.

The Debtor is simply not disclosing his true income as defined in 11 U.S.C. §101(10A), which states in pertinent part as follows:

> **(10A)** The term "current monthly income"--
>
> **(A)** means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--
>
> **(i)** the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii)….

The Court will note that 11 U.S.C. §101(10A)(A) defines current monthly income as the average monthly income the debtor receives *derived* during the 6-month period preceding the bankruptcy filing. Trinity submits that by including the phrase "derived during the 6-month period" preceding the bankruptcy, Congress meant to capture in the calculation all amounts earned by a debtor during that period and which the debtor receives. The timing of the actual receipt is not subject to the temporal qualification of being during the 6-month period preceding the bankruptcy filing, only that the income be *derived* during that period. This is the plain reading of the statute. Consequently, Trinity objects to the Debtor's Means Test calculation because it does not take into account any year-end distribution of income derived during the 6-month period preceding the bankruptcy filing, or of income derived during that 6-month period but left in GEMS by the Debtor in order to save it from inclusion in the calculation. The Debtor should be required to add 1/12 of any end of year distribution he received from GEMS for 2017

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SANTA ANA

IRV #4828-4681-3561 v1
06836-0089

- 3 -

1:17-BK-13413-VK
OBJECTION TO SECOND AMENDED PLAN

to the amount of his current monthly income, as well as, 1/12 of 35% of any 2017 income the Debtor and his brother left in GEMS and did not distribute.

Trinity's position regarding the proper calculation of Current Monthly Income ("CMI") under 11 U.S.C. §101(10A)(A) has also been the position of several courts that have looked at the issue. For example, in *In re Bernard*, 397 B.R. 605, 607 (Bkrtcy. W.D.Mich. 2008), the bankruptcy court concluded (emphasis original):

> As the UST correctly notes, CMI is not restricted to income a debtor derives *and* receives during the six months prepetition; the income has to have been "derived" during the six month period but the timing of its actual receipt is irrelevant. Giving "derived" its ordinary meaning, namely "formed or developed out of something else," WEBSTER'S THIRD INTERNATIONAL DICTIONARY, the Court concludes that CMI includes income that resulted from employment during the relevant six month period even though the Debtor received the actual paycheck for that work after the end of the six month period. Income derived from employment prior to the beginning of the six month period but actually received during the six month period should not be included.

A further example is found in *In re Robrock*, 430 B.R. 197, 204 (Bkrtcy. D.Minn. 2010), where the bankruptcy court analyzed the language of 11 U.S.C. §101(10A)(A) and reached the same conclusion as follows:

> The statutory definition does require receipt by the debtor for inclusion of particular income in the calculus; but, the fact of receipt is only the threshold. Under the statutory language, includable income is fixed by a modifying participle—the amount of income "*derived" during* the six months is the input for the averaging process, regardless of the date of receipt. The statutory concept is logically understood as "income that *resulted from* employment *during* the relevant six month period even though the Debtor received the actual paycheck for that work after the end of the six month period." In re Bernard, 397 B.R. 605, 607 (Bankr.D.Mass.2008) (emphasis added).

Trinity admits that Judge Donovan concluded differently in *In re Katz*, 451 B.R. 512 (Bkrtcy. C.D.Cal. 2011), and held that only income received during the 6-month period counted. However, Judge Donovan was concerned in *Katz* with income <u>earned</u> before the six-month period and received <u>during</u> it, not with income <u>earned</u> during the 6-month period and received <u>afterward</u>. In his decision, Judge Donovan disregarded *Bernard* and *Robrock* as non-controlling authority, and declined to follow their reasoning. In this case, *Katz* is likewise non-controlling authority,

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SANTA ANA

IRV #4828-4681-3561 v1
06836-0089

- 4 -

1:17-BK-13413-VK
OBJECTION TO SECOND AMENDED PLAN

and Trinity submits that *Bernard* and *Robrock* provide the better reasoned position.

Trinity maintains that if correct CMI and Means Test calculations are performed, then the Debtor's commitment period will need to be 60 months and the Debtor will be required to file Official Form 122C-2, *Chapter 13 Calculation of Your Disposable Income* in order to support the amounts to be paid in a confirmable plan. 11 U.S.C. §1325(b)(4); *In re Kagenveama*, 541 F.3d 868 (9th Cir. 2008); *Hamilton v. Lanning,* 130 S.Ct. 2464 (2010). Without the missing information, the Debtor fails to meet his burden for confirmation under 11 U.S.C. § 1325(a)(1), (3), and (6).

**B.    The Plan is Not Proposed in Good Faith Due to the Debtor's Educational Expenses**

The Debtor's Reply attempts to justify sinking 24.9% of the Debtor's family's combined monthly income into religious schooling by arguing that "Being an orthodox Jew is unlike being religious in any other faith. For a religious Jew, sending one's child to religious school is not a preference, it is an imperative . . . A religious Jewish education is the essence, and the future, of Judaism and the Jewish people." Reply at 3.[1] The Debtor overstates his case, and cannot point to *any* decisions permitting such a high percentage of income to be spent on religious schooling. Further, the Debtor is attempting to resurrect the unsuccessful argument from debtors in the mid-nineties that they have a religious right to make charitable contributions no matter the Bankruptcy Code's requirement of committing all disposable income. In *In re Tessier*, 190 B.R. 396, 404 (Bankr. D. Mont. 1995), for example, the debtors—joined by *amicus curiae* briefs filed by Orthodox Jewish organizations—argued that the "faithful exercise of their religion is 'contingent' upon their continuing to make monetary religious contributions." The court agreed that the Bankruptcy Code's requirement of committing all disposable income did "substantially burden" the debtors' religious exercise, but denied confirmation of the proposed Chapter 13 plan anyway because the debtors "do not commit all of their disposable income to the Plan." *Id.* at 407. As outlined in the Objection, BAPCPA then went on to place strict limits on Chapter 13 debtors'

---

[1] Page number citations are to the page number header added by the Court, not the original page numbers used by the Debtor.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SANTA ANA

IRV #4828-4681-3561 v1
06836-0089

- 5 -

1:17-BK-13413-VK
OBJECTION TO SECOND AMENDED PLAN

expenditures on religious contributions and private schooling.

The Plan, like its previous iterations, illegally proposes to blow BAPCPA's restrictions out of the water. The Debtor cites to a few cases that permit spending $260 to $614 per month on parochial school, Reply at 8-11, but a review of these cases reveals that *none* propose spending as high of a percentage of income on schooling as the Debtor does. The Debtor's entire justification for the proposed schooling is that "his children have always attended religious day school . . . and are not equipped emotionally to handle the rough and tumble world of the public school culture." *Id.* at 10. The Debtor goes on to repeat himself by stating that "Debtor's children have always attended religious Jewish school. They know no other world than the religious world, which is how Debtor wants it to be." *Id.* at 11.

All parents want the best for their children. But the fact that the Debtor's children have so far been sheltered in private school is not a reason to continue the expenditures at the expense of the Debtor's creditors. Chapter 13 is intended to *reorganize* a debtor's finances, not just rubber-stamp the status quo while flying in the face of the Code. The latest Plan and amended schedules do not change this result, as the Debtor has only increased his purported income by 3% through a "contribution from in-laws" [Docket No. 81] in order to minimally increase Plan payments. More importantly, the Debtor can point to **no** special needs or special circumstances that could justify spending a quarter of the Debtor's after-tax income just on religious schooling. The Bankruptcy Appellate Panel of the First Circuit has explained that "mere preference for private schooling is not sufficient," and that "a compelling circumstance" such as "a learning disability and a social disorder" is required to justify educational expenses for debtors' children in lieu of committing the funds to a plan as disposable income. *In re Watson*, 309 B.R. 652, 662 (B.A.P. 1st Cir. 2004), *aff'd*, 403 F.3d 1 (1st Cir. 2005). The Debtor has not cited to any case law indicating that mere fervency of belief is enough to subvert the Code.

At bottom, the Plan proposes religious educational expenses greatly in excess of statutory allowances. Section 1325(b)(2)(A)(ii) limits a debtor's charitable contributions as a deduction from "disposable income" to no more than "15 percent of gross income of the debtor," even if the debtor is a below-median earner. *See In re Tranmer*, 355 B.R. 234, 252 (Bankr. D. Mont. 2006).

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SANTA ANA

IRV #4828-4681-3561 v1
06836-0089

- 6 -

1:17-BK-13413-VK
OBJECTION TO SECOND AMENDED PLAN

1  Fifteen percent would be only $1,266.25 a month in the Debtor's case, based on the Debtor and
2  his wife's gross income. The Debtor has gone far past the statutory limit by spending $1,984.60
3  per month.

4  The Debtor invites this Court to overlook his outsized expenditures by attempting to use
5  both the private schooling and the "charitable contribution" statutory amounts. Reply at 15.
6  However, the Debtor cannot stack his "charitable contribution" amounts with the private school
7  tuition expense provided in Section 707 because his confirmation briefs have repeatedly shown
8  that he has *no* "compelling circumstance" that justifies the expenditure. *See In re Watson* at 662.
9  The Bankruptcy Appellate Panel of the First Circuit has explained that "while § 1325(b)(2)(A)
10 protects the rights of debtors to continue making religious and charitable contributions after they
11 file for bankruptcy relief, such protection does not extend to private religious school tuition
12 payments." *Id.* at 662. Simply put, the Debtor may not sneak in his schooling payments using the
13 "charitable contributions" category: "the 'charitable contribution' exception does not protect a
14 Chapter 13 debtor's right to use disposable income for payment of private religious school
15 tuition." *Id.* at 663. The case law is also clear that "the expense of debtors to pay parochial
16 school tuition for their children is not a 'reasonably necessary' expense, for purposes of
17 determining whether a Chapter 13 plan offers to pay creditors all of the debtors' disposable
18 income." *In re Maura*, 491 B.R. 493, 515 (Bankr. E.D. Mich. 2013) (collecting cases).

19 As the Debtor has shown no special needs or compelling circumstances, the Debtor cannot
20 employ a private school tuition expense, and the Plan cannot be confirmed because it contributes
21 far too much of the Debtor's income to religious schooling. At a minimum, the Court should cap
22 the Debtor's outlay on religious schooling to the statutorily provided fifteen percent "charitable
23 contributions" expense—in this case, $1,266.25, which itself is far in excess of the actual
24 Congressional authorization for expenditures on private schooling. Accordingly, Trinity requests
25 denial of confirmation and dismissal of this case if the Plan is not amended.

26 ///
27 ///
28 ///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SANTA ANA

IRV #4828-4681-3561 v1
06836-0089

- 7 -

1:17-BK-13413-VK
OBJECTION TO SECOND AMENDED PLAN

Main Document Page 8 of 10

**CONCLUSION**

The Plan fails to commit the Debtor's disposable income. The Debtor has also failed to demonstrate that he has below-median income. Given the long history of this case and the Debtor's repeated failed attempts to confirm a plan, Trinity submits that dismissal of this case is appropriate. If the Court is not inclined to dismiss this case, Trinity respectfully requests that the Plan not be confirmed as proposed.

Dated: October 30, 2018

Respectfully submitted,

BURKE, WILLIAMS & SORENSEN, LLP

By: /s/ Rafael Garcia

Richard J. Reynolds
Rafael R. Garcia-Salgado
Attorneys for Creditor
TRINITY FINANCIAL SERVICES, LLC

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SANTA ANA

IRV #4828-4681-3561 v1
06836-0089

- 8 -

1:17-BK-13413-VK
OBJECTION TO SECOND AMENDED PLAN

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**1851 E. First Street, Suite 1550, Santa Ana, CA 92705**

A true and correct copy of the foregoing document entitled (*specify*):
**SECURED CREDITOR TRINITY FINANCIAL SERVICES, LLC'S OBJECTION TO SECOND AMENDED CHAPTER 13 PLAN**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **10/30/18**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Richard Mark Garber    rickgarber@sbcglobal.net, garberrr82127@notify.bestcase.com
- Rafael R Garcia-Salgado    rgarcia@bwslaw.com, bantle@bwslaw.com,rjr-nef@bwslaw.com,jgomez@bwslaw.com
- Christina J O    christinao@mclaw.org, CACD_ECF@mclaw.org
- Richard J Reynolds    rreynolds@bwslaw.com, psoeffner@bwslaw.com,tmims@bwslaw.com,rjr-nef@bwslaw.com;fcabezas@bwslaw.com
- Elizabeth (SV) F Rojas (TR)    cacb_ecf_sv@ch13wla.com
- Gabor Szabo    smdulaw@sbcglobal.net
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **10/30/18**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| Debtor: | Judge: |
|---|---|
| Mark Efrem Rosenberg | Honorable Victoria S. Kaufman |
| 12731 Hatteras Street | United States Bankruptcy Court |
| Valley Village, CA 91607 | Central District of California |
|  | 21041 Burbank Blvd., Suite 354 |
|  | Woodland Hills, CA 91367 |

☐ Service information continued on attached page

///

///

Burke, Williams & Sorensen, LLP
Attorneys At Law
Santa Ana

IRV #4828-4681-3561 v1
06836-0089

- 9 -

1:17-BK-13413-VK
OBJECTION TO SECOND AMENDED PLAN

1  **3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*), I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

**October 30, 2018**     Bernadette C. Antle
*Date*                  *Printed Name*                                    *Signature*

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SANTA ANA

IRV #4828-4681-3561 v1
06836-0089

- 10 -

1:17-BK-13413-VK
OBJECTION TO SECOND AMENDED PLAN