**RICHARD MARK GARBER**
**Attorney at Law Bar #102688**
**12652 Huston Street**
**North Hollywood, CA 91607**
E-mail: rickgarber@sbcglobal.net
(818) 762-8120 | FAX (818) 762-0574

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | Chapter 13 |
| | Case No. 1:17-bk-13413-VK |
| MARK EFREM ROSENBERG | **REPLY OF MARK EFREM ROSENBERG TO THE DECLARATION OF RAFAEL R. GARCIA-SALGADO REGARDING DEBTOR'S INCOME AND HOW IT AFFECTS DEBTOR'S APPLICABLE COMMITMENT PERIOD; DECLARATION OF RICHARD MARK GARBER; DECLARATION OF MARK EFREM ROSENBERG** |
| | Date: 12/11/18
Time: 9:30 a.m. |
| Debtor | Ctrm: 301 |

**TO ALL PARTIES IN INTEREST:**

**COMES NOW MARK ROSENBERG** (hereinafter, "Debtor"), in reply to the Declaration of Rafael R. Garcia-Salgado in support of plan confirmation objection filed by Trinity Financial Services; Garcia-Salgado's declaration relates to the calculation of Debtor's applicable commitment period, based on Debtor's income.

Dated: November 26, 2018

_____
Richard Garber, Attorney for Debtor

-1-

MEMORANDUM OF POINTS & AUTHORITIES

1. <u>Debtor's applicable commitment period, which is 36 months, is based on Debtor's actual income for the six-month period immediately preceding the commencement of Debtor's bankruptcy case.</u>

Trinity demanded Debtor's 2017 income tax return for the purpose of trying to prove to this court that Debtor's applicable commitment period should be 60 months; Trinity, through its attorney, argued in this most recent declaration that Debtor's applicable commitment period should be 60 months because Debtor's actual income (according to Trinity) for calendar year 2017 was $110,837.88. Debtor does not know from where Trinity, through its counsel, derived the income figure that he asserts Debtor earned in 2017, but said income figure is not reflective of the income Debtor reported on his 2017 filed income tax return.[1] [See page 5 of 9 of the Declaration of Raphael Garcia-Salgado, filed on November 21, 2018 as Docket #92].

The median income for a family of six people on the date Debtor commenced his case was only $106,244.00; the gist of Trinity's argument is that Debtor is not eligible for a three year commitment period because his annual income for 2017 exceeded the median income for a family of six people on the date he filed Chapter 13.

First, it should be noted that Trinity's statement of Debtor's income is incorrect, as it does not match the income stated on the very 2017 income tax return for Debtor that Trinity has attached to the Declaration of Raphael Garcia-Salgado.

Second, it should be pointed out that Trinity incorrectly has used Debtor's gross annual income for the purposes of calculating the applicable commitment period, even though Trinity's counsel, a very competent and experienced bankruptcy attorney, knows, or certainly should know, that a debtor's annual income is not relevant in calculating the applicable commitment period [See the definition of "current monthly income," in 11 U.S.C. §101(10A)(A)(i)].

///

///

---

[1] According to Trinity, Debtor earned $110,837.88. Debtor is not sure from where Trinity derived said income figure, but it is not based on Debtor's 2017 income tax return, on which Debtor reported gross income of $108,098.00, including a $3,000.00 capital loss, and adjusted gross income of $107,848.00, which includes an expense for school supplies of $250.00. However, as noted, the annual income as reported on a debtor's tax return is not the relevant figure for calculating the debtor's applicable commitment period in Chapter 13.

Rather, the only income that a debtor actually earns and receives during the six months immediately preceding the filing of bankruptcy (excluding any income earned during the month in which the bankruptcy case is filed) is used for the purposes of calculating the applicable commitment period [See, 11 U.S.C. §101(10A)(A)(i)]. As such, Trinity has incorrectly argued that Debtor's current monthly income, as defined in, and as calculated pursuant to, 11 U.S.C. §101(10A)(A)(i), exceeded the median income for a family of six people on the date Debtor filed his Chapter 13 case.

Debtor commenced his case on December 29, 2017; thus, the relevant period from which Debtor's current monthly income is derived is the 6-month income period from June 1, 2017 through November 30, 2017.

Debtor has testified that he earned $6,000.00 per month during the six months prior to commencing his case, and that his wife earned income of $2,441.69 per month during the same time, as per Debtor's Form 122C-1, for a total monthly income of $8,441.69. Trinity acknowledges the accuracy of the reported income for Debtor's wife; as Trinity's attorney, Garcia-Delgado, stated on paragraph 7, page 2 of his declaration, "Debtor's Spouse's reported Schedule "I" income matches the tax returns." This is because Debtor's spouse has a fixed monthly salary that does not change. However, Debtor's income for the applicable six month income calculation period does not match the income reported on his tax return (nor will it ever), because Debtor leaves some of his income from GEMS in the business as unrealized earning for the purposes of operating the business.[2]

On an annualized basis, and for the purpose of calculating Debtor's applicable commitment period, Debtor's annual income was $101,300.28, as per Form 122C-1, which income was less than the median income of $106,244.00. Debtor's income for determining the applicable commitment period was correctly calculated.

Trinity has failed to submit any evidence to this court regarding Debtor's "current monthly income" for the six months prior to the commencement of his case. The excerpts of Debtor's 2017 tax return provide evidence only of Debtor's actual total income for 2017; said excerpts do NOT

---

[2] As Debtor has testified, neither he nor his brother, who owns a 65% interest in GEMS, take out their entire ownership draw as salary. If they did, there would be no money left with which to operate the company. Debtor testified that he earned $81,628.00 as his 35% interest in GEMS, including salary; Debtor took home gross income of $72,000.00 ($6,000.00 per month), leaving an additional $9,628.00 as his share of the unrealized, undistributed profits in GEMS that GEMS used to operate.

provide any evidence of Debtor's "current monthly income" for the six-month period immediately prior to the commencement of Debtor's case; absent such evidence, Trinity cannot, as a matter of law, disprove Debtor's eligibility for a 36-month applicable commitment period.

Hence, the excerpts of Debtor's tax return provided by Trinity - indeed, the entire 2017 tax return - is insufficient to disprove Debtor's entitlement to a 36-month commitment period. Debtor has provided adequate evidence to the Chapter 13 Trustee (which evidence Trinity cannot disprove) to demonstrate that a) his annualized income for the six months prior to the filing of bankruptcy is less than the median income for a family of six and b) he is entitled to a 36-month commitment period. It should be noted that the Trustee no longer disputes that Debtor is entitled to a 36-month commitment period. Trustee is supporting Debtor's currently proposed Second Amended Plan.

2. <u>Trinity also has failed to prove that Debtor is receiving any income other than the $6,000.00 per month for which he has provided proof.</u>

At the previous confirmation hearings, Trinity argued that Debtor was receiving a year-end ownership draw that he was not disclosing. In his most recently filed declaration, Garcia-Salgado does not testify that Debtor has received, or is receiving, any additional ownership draw beyond the $3,500.00 per month that Debtor has always acknowledged receiving. Garcia-Salgado has no evidence to disprove that Debtor's actual realized income from GEMS is $72,000.00 annually (including his regular salary of $2,500.00 per month).

In 2017, Debtor reported income from GEMS of $81,628.00, as per his tax return [See page 6 of Garcia-Delgado's declaration]. The $81,628.00 income figure was inclusive of both Debtor's salary and owner's draw. Thus, the $81,628.00 of income reported from GEMS on his 2017 federal income tax return represented Debtor's entire 35% distributive share of the net profits of GEMS, including any income taken and denoted as salary.

However, as with any business, GEMS always needs money with which to operate. That money comes from the net profits of GEMS. If Debtor and his brother (who is the 65% majority owner of GEMS) were to take all of the net profit as income, GEMS would not have any money with which to operate. There always must be money in GEMS' general account for payroll, to pay bills, and to buy new or replacement equipment and video games, and/or to cover unexpected emergency expenses.

While Debtor paid income taxes on the entire income of $81,628.00 that he reported on his 2017 federal income tax return, Debtor's actual income never exceeded the $72,000.00 (i.e., the $6,000.00 in salary and owner's draw that he received on a monthly basis) that he reported and disclosed in his income Schedule "I" and on Form 122C-1. The difference of $9,628.00 [$81,628.00 minus $72,000.00 = $9,628.00] represents the amount of Debtor's unrealized share of GEMS' 2017 net profits that Debtor left in the business so that GEMS would have money with which to operate. Debtor's brother, the majority owner, also left unrealized net profits in GEMS equal to his ownership interest in GEMS.

## CONCLUSION

Debtor has demonstrated that his family income, for a family of six people, was $101,300.28, which was less than the median income of $106,244.00. Thus, Debtor has demonstrated that he qualified for a 36-month applicable commitment period.

Moreover, Trustee has accepted Debtor's proof of income, and his expenses, based on Debtor's willingness to increase his distribution to unsecured creditors (i.e., Trinity, the only unsecured creditor). The Chapter 13 Trustee has agreed to, and will, withdraw her objection to the confirmation of Debtor's Second Amended Plan, and will support the confirmation of said plan, as Debtor's best effort, based on the use of all of his reported monthly income.

**WHEREFORE**, Debtor prays that this court deny Trinity's objection to the confirmation of Debtor's Second Amended Plan, and that it confirm Debtor's Second Amended Plan as proposed.

Dated: November 26, 2018

_____
Richard Mark Garber, Attorney for Debtor

# DECLARATION OF MARK EFREM ROSENBERG

I, Mark Efrem Rosenberg, declare:

1. I am the debtor in the above-titled case, which I filed on December 29, 2017.

2. I have personal knowledge of the facts to which I have testified.

3. In 2017, I reported income from GEMS of $81,628.00; that income included both salary and my owner's draw. That figure included my entire 35% distributive share of the net profits of GEMS.

4. However, as with any business, GEMS always needs income to operate. That operating income comes from the profits of the business. If my brother (who is my partner in GEMS) were to take all of GEMS' net income out of the company as profit, GEMS would not have any money with which to operate. There always must be money in GEMS' general account for payroll, to pay bills, and to buy new or replacement equipment and video games, and/or emergencies.

5. While I reported income from GEMS on my 2017 federal income tax return in the amount of $81,628.00 - on which I paid income tax - my gross take home income never exceeded the $72,000.00 (i.e., the $6,000.00 in salary and owner's draw that I received on a monthly basis) that I reported in my schedules.

6. The difference of $9,628.00 represents the amount of my unrealized share of GEMS' 2017 profits; said income was unrealized because I left that portion of my distributive share of GEMS' profit in the business for operational purposes.

7. At no time in 2015, 2016, or 2017 did I ever receive any additional ownership draw over and above my stated salary (including monthly ownership draw); in 2017 and 2018 year to date, my monthly income, including my owner's draw, was $6,000.00 per month.

8. I do not anticipate receiving any additional ownership draw (over and above my $6,000.00 monthly income) in 2018.

9. My brother, the majority GEMS owner, also left net profits in GEMS equal to his 65% ownership interest in GEMS; together, the unrealized net profits that we did not take in 2017 provided the operating income to operate through the first quarter, which typically is our slowest season.

1 | I declare under penalty of perjury of the laws of the State of California that the foregoing
2 | is true and correct and within my personal knowledge. Executed this November 26, 2018, in Valley
3 | Village (North Hollywood), CA.

*[signature]*

Mark Efrem Rosenberg, Declarant

# DECLARATION OF RICHARD MARK GARBER

I, Richard MarkGarber, declare:

1. I am an attorney licensed to practice law before this court and before all of the courts of the State of California. I am the attorney for Debtor in the above-titled bankruptcy case. I have personal knowledge of the facts to which I have testified.

2. At previous confirmation hearings, Trinity, through its counsel, Garcia-Salgagdo, argued that Debtor was receiving a year-end ownership draw that he was not disclosing.

3. In his most recently filed declaration, after reviewing Debtor's 2017 personal income tax return, as well as the GEMS 2017 corporate income tax return, Garcia-Salgado fails to testify that Debtor has received, or is receiving, any additional ownership draw beyond the $72,000.00 that Debtor always has acknowledged that he was earning (based on salary of $2,500.00 per month and owner's draw of $3,500.00 per month).

4. Trinity demanded and received Debtor's 2017 personal and corporate income tax returns for the purpose of trying to prove to this court that Debtor's applicable commitment period should be 60 months.

5. Trinity, through its attorney, argued in its attorney's most recent declaration that Debtor's applicable commitment period should be 60 months because Debtor's actual income for calendar year 2017, based on his 2017 tax return, was $110,837.88. This income figure does not take into account Debtor's $3,000.00 capital loss.

6. However, the median income for a family of six people on the date Debtor commenced his case was only $106,244.00.

7a. For the purposes of determining the applicable commitment period, the relevant income is a debtor's actual income for the six months prior to the commencement of the case, excluding any income earned in the same month that the case was commenced.

7b. For the purposes of determining the applicable commitment period, the relevant income is Debtor's monthly income of $6,000.00, and his wife's monthly income of $2,441.69, for a monthly total income of $8,441.69, for an annualized income of $101,300.28.

8. Based on said calculation, Debtor has demonstrated that his annualized income at the time he commenced his case was $101,300.28 for a family of six people. That was below the median income of $106,244.00 for a family of six people on the date Debtor filed for bankruptcy, thereby qualifying Debtor for a 3-year commitment period.

I declare under penalty of perjury of the laws of the State of California that the foregoing facts are true and correct and within my personal knowledge. Executed this November 26, 2018, at North Hollywood, CA.

_____
Richard Mark Garber, Declarant

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
12652 Huston Street, North Hollywood, CA 91607

A true and correct copy of the foregoing document entitled (*specify*): _____
REPLY OF MARK ROSENBERG TO
THE DECLARATION OF RAFAEL GARCIA-SALGADO
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 11/27/2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 11/28/2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Victoria Kaufman, U.S. Bankruptcy Judge, 21041 Burbank Blvd., Suite 354, Woodland Hills, CA 91367

Mark Efrem Rosenberg, Debtor, 12731 Hatteras St., Valley Village, CA 91607

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/27/2018 | Keti Bicon | */s/ Keti Bicon* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                                                F 9013-3.1.PROOF.SERVICE

# Mailing Information for Case 1:17-bk-13413-VK

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Richard Mark Garber**  rickgarber@sbcglobal.net, garberrr82127@notify.bestcase.com
- **Rafael R Garcia-Salgado**  rgarcia@bwslaw.com, bantle@bwslaw.com,rjr-nef@bwslaw.com,jgomez@bwslaw.com
- **Christina J O**  christinao@mclaw.org, CACD_ECF@mclaw.org
- **Richard J Reynolds**  rreynolds@bwslaw.com, psoeffner@bwslaw.com,tmims@bwslaw.com,rjr-nef@bwslaw.com;fcabezas@bwslaw.com
- **Elizabeth (SV) F Rojas (TR)**  cacb_ecf_sv@ch13wla.com
- **Gabor Szabo**  smdulaw@sbcglobal.net
- **United States Trustee (SV)**  ustpregion16.wh.ecf@usdoj.gov

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**JPMORGAN CHASE BANK, N.A.**
,

## Creditor List

Click the link above to produce a complete list of **creditors** only.

## List of Creditors

Click on the link above to produce a list of **all** creditors and **all** parties in the case. User may sort in columns or raw data format.